107 Cal.App.3d 62 (1979)
167 Cal. Rptr. 183
RICARDO S. CENTENO, Plaintiff and Appellant,
v.
ROSEVILLE COMMUNITY HOSPITAL, Defendant and Respondent.
Docket No. 18109.
Court of Appeals of California, Third District.
November 6, 1979.
*65 COUNSEL
Brian McCarthy, Harry Gonick and Bruce Krell for Plaintiff and Appellant.
McDonough, Holland, Schwartz & Allen, McDonough, Holland & Allen, G. Richard Brown and Ann H. Morris for Defendant and Respondent.
OPINION
WARREN, J.[*]
Plaintiff, Ricardo S. Centeno, M.D., sought a declaratory judgment, injunctive relief and damages from defendant, Roseville Community Hospital. After trial without a jury, the trial court entered judgment for the hospital on all causes of action, and plaintiff appeals. We affirm.

*66 STATEMENT OF FACTS
After a series of problems had developed at the hospital in the providing of radiology services, and after a number of meetings were held with interested persons, the hospital administration and the board of directors entered into an exclusive radiology medical services contract with Roseville X-ray Medical Group, a partnership comprised of plaintiff and three hospital radiologists, Drs. Farkas, Perednia and Martin. The agreement was signed on December 16, 1974, and provided for review at 30 days, 90 days, 1 year, and annually thereafter.
Subsequently, plaintiff became embroiled in a controversy with his partners which culminated in his no longer being a member of the partnership. The hospital then refused to allow him to use their radiology facilities, claiming it had an exclusive contract with the remaining partners.
He sued the hospital, alleging in his complaint that: (1) the parties to the contract maliciously, unlawfully and wrongfully deprived him of his right to practice his profession; (2) he would suffer irreparable damage unless injunctive and declaratory relief was granted; (3) the hospital intentionally and maliciously interfered with his present and prospective economic and professional benefits and advantages by refusing to allow him full and complete radiological clinical privileges including use of the hospital's radiological, clinical and laboratory facilities.
He contends on appeal: (1) the contract is no longer in existence, and if so, it is so vague and uncertain as to be unenforceable; (2) the contract is violative of Business and Professions Code section 16600 as an unlawful restraint on his right to practice a profession; (3) the contract was not entered into with an adequate investigation and is not justified under a balancing of appropriate policy considerations; (4) the contract is unlawful as an improper delegation of the hospital's authority to choose medical staff members; and (5) he was denied due process of law when the hospital failed to hold a hearing and when it refused to allow him access to the radiology facilities at the hospital.

I
Plaintiff first contends that the contract either is no longer in existence, or if it is, it is so vague and uncertain that it is unenforceable.
*67 The contract was introduced into evidence and the testimony further establishes its execution and performance. Plaintiff's claim that the agreement was automatically terminated upon his withdrawal from the partnership is supported only by his own testimony and ignores conflicting evidence.
The minutes of the board of directors reveal that the signatories' intent was that the contract addendum provision holding "the Agreement between the Group and Hospital to be null and void upon the removal or negation of any one or all of the physicians' signatures below from said Agreement" was only intended to vitiate the agreement in the event a partnership arrangement could not be worked out between the doctors forming the Roseville X-ray Medical Group by February 15, 1975. Subsequent minutes reflect the continued intent of the hospital not to consider the agreement terminated upon the subsequent withdrawal of a signatory partner to the contract unless the desired radiological services were not being satisfactorily performed.
After plaintiff's withdrawal from the partnership, the hospital's board of directors elected to exercise the 120-day notice of termination provision and decided to have an evaluation made of the radiological medical group's performance before deciding whether to renew the contract.
After receipt of a favorable report by the American College of Radiology, the directors, with the concurrence of the remaining members of the Roseville X-ray Medical Group, voted on February 22, 1977, to renew the contract for a 5-year period with provisions for annual review and a 120-day notice termination clause. The contract was in the process of being reviewed for further renewal at the time of trial. Plaintiff has not pointed to any evidence showing that the contract was not again renewed or otherwise in force.
His additional contention that the agreement is so vague and uncertain as to be unenforceable is equally devoid of merit.
(1) "If a contract is capable of two constructions courts are bound to give such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if that can be done without violating the intention of the parties." (Rodriguez v. Barnett (1959) 52 Cal.2d 154, 160 [338 P.2d 907].)
*68 The contract clearly specifies the rights of the parties and, although not setting forth a definite termination date, clearly provides for a year-to-year term.
The renewal provision provides:
"4.04. TERM OF AGREEMENT. This agreement shall remain in full force and effect for a term of one (1) year from 12-16-74 and shall continue thereafter on a year-to-year basis unless terminated by either party, provided, however, that either of the parties hereto shall have the right and privilege of cancelling and terminating this agreement on one hundred twenty days' (120 days') written notice to the other and provided, further, that Hospital shall consult with the Executive Committee of the Medical Staff prior to giving notice of termination hereunder. Upon the expiration of said notice (one hundred twenty days from its delivery), this agreement shall be and become of no further force of [sic] effect whatsoever and each of the parties hereto shall be relieved and discharged herefrom."
This provision is certain enough to be enforceable. (Drzewiecki v. H & R Block, Inc. (1972) 24 Cal. App.3d 695, 700, 704-705 [101 Cal. Rptr. 169]; see Miller v. Stults (1956) 143 Cal. App.2d 592, 599-603 [300 P.2d 312]; Aaker v. Smith (1948) 87 Cal. App.2d 36, 43 [196 P.2d 150]; Civ. Code, §§ 1943, 1946; 3A Corbin on Contracts (1960 ed.) § 684, p. 224.)

II
In a series of related contentions, plaintiff argues that the contract is otherwise unenforceable. His attack on the agreement is based on the grounds that it was entered into without adequate investigation, that it is not justified under a standard of balancing of the hardship to the physician and the hardship to the hospital, and that it is violative of section 16600 of the Business and Professions Code.[1] We disagree.

A
(2) Section 16600 is basically a codification of the common law relating to contracts in restraint of trade. (See Rolley, Inc. v. Merle *69 Norman Cosmetics (1954) 129 Cal. App.2d 844, 846, 848 [278 P.2d 63, 282 P.2d 991]; Kaplan v. Nalpak Corp. (1958) 158 Cal. App.2d 197, 200-201 [322 P.2d 226]; City Carpet etc. Works v. Jones (1894) 102 Cal. 506, 510-511 [36 P. 841] [dealing with the statutory precursor of Bus. & Prof. Code, §§ 16600-16602, Civ. Code, §§ 1673-1675]; see Swenson v. File (1970) 3 Cal.3d 389, 392-393 [90 Cal. Rptr. 580, 475 P.2d 852]; Monogram Industries, Inc. v. Sar Industries, Inc. (1976) 64 Cal. App.3d 692, 698 [134 Cal. Rptr. 714].
Where, as here, there is no express intent to depart from, alter, or abrogate the common law rules, a statute purporting to embody such doctrine or rules will be construed in light of common law decisions on the same subject. (People v. Curtis (1969) 70 Cal.2d 347, 352, fn. 2 [74 Cal. Rptr. 713, 450 P.2d 33]; Estate of Elizalde (1920) 182 Cal. 427, 432-433 [188 P. 560]; Dry Creek Valley Assn., Inc. v. Board of Supervisors (1977) 67 Cal. App.3d 839, 844 [135 Cal. Rptr. 726]; Morris v. Oney (1963) 217 Cal. App.2d 864, 870 [32 Cal. Rptr. 88]; see Civ. Code, § 22.2, Bus. & Prof. Code, § 2.)
(3) "There is an established principle at common law that an action will lie where the right to pursue a lawful business, calling, trade, or occupation is intentionally interfered with either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. [Citations.] Whether there is justification is determined not by applying precise standards, but by balancing, in the light of all the circumstances, the respective importance to society and the parties of protecting the activities interfered with on the one hand and permitting the interference on the other. [Citations.]" (Willis v. Santa Ana etc. Hospital Assn. (1962) 58 Cal.2d 806, 810 [26 Cal. Rptr. 640, 376 P.2d 568].) (Italics added.)[2]
*70 Thus, we conclude that there must be a balancing test in light of all the circumstances to determine the validity of such an agreement, and we reject plaintiff's argument that the balancing must only be in terms of the physician affected and the hospital.

B
(4a) We disagree also with plaintiff's contention that an exclusive radiology contract is inherently against public policy.
In declaring a contract void to the extent it exceeds such statutory limitations as those imposed by section 16600, the Legislature thereby adopted a rule of public policy. (Swenson v. File, supra, 3 Cal.3d 389, 394.) (5) But, "... courts are reluctant to declare a contract void as against public policy, and will refuse to do so if by any reasonable construction it may be upheld. (Vick v. Patterson [(1958)] 158 Cal. App.2d 414, 417 [322 P.2d 548].)" (American & Nat. etc. Baseball Clubs v. Major League Baseball Players Assn. (1976) 59 Cal. App.3d 493, 499 [130 Cal. Rptr. 626].) "Whether or not a contract in any given case is contrary to public policy is a question of law to be determined from the *71 circumstances of each particular case. (Spangenberg v. Spangenberg [(1912)] 19 Cal. App. 439, 446-447 [126 P. 379].)" (Russell v. Soldinger (1976) 59 Cal. App.3d 633, 642 [131 Cal. Rptr. 145]; see Boughton v. Socony Mobil Oil Co. (1964) 231 Cal. App.2d 188, 191 [41 Cal. Rptr. 714].)
"Although most of the reported cases deal primarily with `fair procedure' problems in relation to adjudicatory decisions, there can be no doubt that, because denial of staff membership may effectively impair a physician's right fully to practice his profession, neither a private nor public hospital may unreasonably or arbitrarily exclude a physician otherwise qualified from membership on its staff. (See, e.g., Ezekial v. Winkley [(1977)] 20 Cal.3d [267] at p. 272 [142 Cal. Rptr. 418, 572 P.2d 32]; Anton v. San Antonio Community Hosp. [(1977)] 19 Cal.3d [802] at p. 815 [140 Cal. Rptr. 442, 567 P.2d 1162]; Pinsker v. Pacific Coast Society of Orthodontists [(1974)] 12 Cal.3d [541] at pp. 549-554 [116 Cal. Rptr. 245, 526 P.2d 253]; Pinsker v. Pacific Coast Soc. of Orthodontists [(1969)] 1 Cal.3d [160] at p. 166 [81 Cal. Rptr. 623]; Ascherman v. Saint Francis Memorial Hosp. [(1975)] 45 Cal. App.3d 507 [119 Cal. Rptr. 507].) However, it does not necessarily follow that the governing authority of a hospital may not make a policy decision or adopt a rule of general application that certain facilities shall be operated by the hospital itself through an arrangement with one or more physicians to the exclusion of all members of the staff except those who may be coincidentally employed in such operation. (Blank v. Palo Alto-Stanford Hospital Center [(1965)] 234 Cal. App.2d [377] at p. 386 [44 Cal. Rptr. 572].) Indeed, in every case brought to our attention in which a hospital's operation of a facility on a `closed-staff' basis was challenged, the decision of the governing authority of the hospital has been upheld. (Blank v. Palo Alto-Stanford Hospital Center, supra, 234 Cal. App.2d 377 [radiology department]; Letsch v. Northern San Diego County Hosp. Dist. [(1966)] 246 Cal. App.2d 673 [55 Cal. Rptr. 118] [radiology department]; Benell v. City of Virginia [(Minn. 1960) 258 Minn. 559] 104 N.W.2d 633 [radiology department]; Dattilo v. Tucson General Hospital (1975) 23 Ariz. App. 392 [533 P.2d 700] [nuclear medicine services]; Adler v. Montefiore Hospital Ass'n of W. Pa. (1973) 453 Pa. 60 [311 A.2d 634] [cardiology laboratory].)" (Lewin v. St. Joseph Hospital of Orange (1978) 82 Cal. App.3d 368, 391-392 [146 Cal. Rptr. 892]; see Annot., Validity and Construction of Contract Between Hospital and Physician Providing for Exclusive Medical Services (1976) 74 A.L.R.3d 1268-1281.) The rationale of these decisions *72 is that the contract must be examined in view of the ends sought to be accomplished, and that the antitrust laws prohibit only those contracts which unreasonably restrain competition.
(4b) As to an exclusive radiology medical services contract, some of the considerations favorable to such a contract are: (1) promotion of control and standardization of procedures; (2) improved efficiency in the operation of radiology services; (3) promotion of better scheduling economy and availability of services; (4) better supervision and training of technicians; (5) improved morale of radiological department personnel; (6) facilitation of exchange of information between radiologists; (7) encouragement of radiologists to specialize as to certain techniques; and (8) enhancement of full use of expensive equipment. (See Blank v. Palo Alto-Stanford Hospital Center, supra, 234 Cal. App.2d 377, 388-389; Lewin v. St. Joseph Hospital of Orange, supra, 82 Cal. App.3d 368, 389-390.) Negative considerations include the fact that the agreement may interfere with the patient's right to choose a physician. However, this consideration is not applicable to the case at bar, for the record reveals that if either the physician or the patient desires, radiology services can be provided by another radiologist upon proper application to the hospital.
Another negative consideration, to wit, the effect on plaintiff personally, is discussed in section IV below.

C
Plaintiff's contention that the hospital did not undertake an adequate investigation is hypercritical and without legal or evidentiary support. He has not cited any case which requires a hospital to follow a particular course of conduct before entering into such a contract.
(6) "A managerial decision concerning operation of the hospital made rationally and in good faith by the board to which operation of the hospital is committed by law should not be countermanded by the courts unless it clearly appears it is unlawful or will seriously injure a significant public interest. [¶] Judges are untrained and courts illequipped for hospital administration, and it is neither possible nor desirable for the courts to act as supervening boards of directors for every ... hospital ... in the state." (Lewin v. St. Joseph Hospital of Orange, supra, 82 Cal. App.3d at p. 385; see Pinsker v. Pacific Coast *73 Society of Orthodontists, supra, 12 Cal.3d 541, 558; Pitts v. Perluss (1962) 58 Cal.2d 824, 835 [27 Cal. Rptr. 19, 377 P.2d 83].) Even bias or prejudice in favor of the selected policy does not invalidate such decisions. (Wilson v. Hidden Valley Mun. Water Dist. (1967) 256 Cal. App.2d 271, 286 [63 Cal. Rptr. 889].)
Thus, a decision by a hospital will not be set aside by a court unless it is substantively irrational, unlawful, contrary to established public policy, or procedurally unfair. (In addition to the authorities above, see Blank v. Palo Alto-Stanford Hospital Center, supra, 234 Cal. App.2d 377, 392.) There is no merit to any possible contention that the decision must be justified by a compelling interest, for an exclusive contract does not discriminate within the contemplation of the requirements of equal protection of law. (In re Petersen (1958) 51 Cal.2d 177, 182-183 [331 P.2d 24]; Holmes v. Railroad Commission (1925) 197 Cal. 627, 633 [242 P. 486].)
In this case, the decision to enter into the contract was made after a number of meetings wherein interested persons, including plaintiff, could and did express their opinions. The record abundantly reflects (1) the various difficulties the hospital had experienced with an open staff radiology service; (2) there had been a failure to provide adequate radiological service during nonbusiness hours, whereas an exclusive contract would usually provide continuous service; (3) such a contract would enable the radiologists to specialize and improve efficiency through a close working relationship and exchange of technical information; (4) the exclusive contract might eliminate the bickering and fights which had resulted from an open staff arrangement; and (5) the fact that since the hospital would channel all its radiological work through a single entity, there would be decreased costs to patients through elimination of duplicate purchases of expensive equipment.
It is not our role to pick and choose among various alternatives and to determine exactly what factors the hospital administrators must consider. Even if alternative solutions would equally satisfy the need for radiology services, we must find that unless the action complained of can be seen to be violative of the previously mentioned standard as being unreasonable, arbitrary or capricious, it is valid. (See Credit Ins. Gen. Agents Assn. v. Payne (1976) 16 Cal.3d 651, 658 [128 Cal. Rptr. 881, 547 P.2d 993].)
*74 We therefore conclude that the investigation was adequate and that the hospital's decision to enter into the contract was justified under the balancing test.

III
(7) Plaintiff next theorizes that the contract amounts to an improper delegation of the hospital's authority. We disagree.
His reference to Rosner v. Peninsula Hospital Dist. (1964) 224 Cal. App.2d 115 [36 Cal. Rptr. 332] is inappropriate for a number of reasons. In Rosner the hospital's requirement that all doctors must have a demonstrable ability to respond to malpractice claims was held to be an improper delegation of the hospital's duty to select physicians for use of its facilities. Since an insurance company's issuance of a malpractice insurance policy would control who could practice at the hospital, a nonmedical group would essentially have been making a decision which is properly exercised only by persons with medical or medical administration experience. In the case before us, the selection of who would be in the Roseville X-ray Medical Group was made by persons with a medical background, to wit, the physicians who were partners in that group and the hospital's governing body. Also, the physicians were already part of the hospital's department of radiology and were not a nonhospital group. In fact, the agreement specifically disallows a delegation of authority, for paragraph 2.07 of the agreement provides in pertinent part: "[T]he sole interest and responsibility of Hospital is to assure that the Department of Radiology and services covered by this agreement shall be performed and rendered in a competent, efficient and satisfactory manner. The standards of medical practice and professional duties of the Radiologist shall be determined by the Medical Staff of the Hospital. All applicable provisions of law and other rules and regulations of any and all governmental authorities relating to licensure and regulation of physicians and hospitals and to the operation of the Department shall be fully complied with by all parties hereto. In addition, the parties shall also operate and conduct the Department in accordance with the standards and recommendations of the Joint Commission on Accreditation of Hospitals, the By-Laws of the Hospital, the By-Laws and rules and regulations of the Medical Staff as may be in effect from time to time."
In addition, the hospital's rules provided that its staff would determine medical staff privileges.

*75 IV
(8) Plaintiff lastly contends that the hospital was required to hold a hearing before he was excluded from using the radiology facilities. This contention is devoid of merit.
"`The common law requirement of a fair procedure does not compel formal proceedings with all the embellishments of a court trial ... nor adherence to a single mode of process. It may be satisfied by any one of a variety of procedures which afford a fair opportunity for an [affected party] to present his position....' (Pinsker v. Pacific Coast Society of Orthodontists [(1974)] 12 Cal.3d 541, 555-556, fn. omitted.)" (Anton v. San Antonio Community Hosp. (1977) 19 Cal.3d 802, 829 [140 Cal. Rptr. 442, 567 P.2d 1162]; see Ezekial v. Winkley (1977) 20 Cal.3d 267, 272, 275 [142 Cal. Rptr. 418, 572 P.2d 32].)
Assuming arguendo that a hospital performs public services (see Lewin v. St. Joseph Hospital of Orange, supra, 82 Cal. App.3d 368, 376, fn. 3), there is no reason why entry into an exclusive radiological medical services contract and its enforcement constitute a denial of due process to those doctors who are not included in the contract.
In In re Petersen, supra, 51 Cal.2d 177, the Supreme Court upheld the prosecution of a taxicab operator who violated an exclusive franchise authorized by a municipal ordinance. The court stated: "The use of highways by a common carrier is a privilege which may be granted or withheld by the state in its discretion, without violating either the due process clause or the equal protection clause. ... It has also been recognized that, in general, the government has power to grant exclusive rights to engage in services of a public character as contrasted with an ordinary business or profession. [Citations.] The power to establish exclusive stands contained in an earlier form of the ordinance here under consideration was upheld as a regulation conducive to the general welfare comparable to the granting of an exclusive franchise. [Citations.]" (Id., at pp. 182-183.) (Italics added.)
If a municipality can grant exclusive common carrier privileges without violating the due process clause, a hospital should be able to grant an exclusive contract of the nature of the contract in question.
The contention that a hearing is required is untenable. We could not give serious consideration to the demand that before a public contract is *76 awarded, an evidentiary hearing must be held so as to afford all potentially interested persons an opportunity to contest the award. Yet such a contention is exactly what plaintiff advances here.
This is not a case in which the plaintiff was terminated as a staff member from the hospital. He is still free to treat patients in the hospital, may render second opinions when patients so desire, and is free to provide radiological services to anyone. He is only precluded from using some of the hospital's facilities in doing so. Neither is this a case where the hospital's actions suggested that there were deficiencies in plaintiff's personal or professional character. In those cases where a formal hearing has been required, the hospital was seeking to deny the doctor staff membership privileges. (See Anton v. San Antonio Community Hosp., supra, 19 Cal.3d 802, 829; Ezekial v. Winkley, supra, 20 Cal.3d 267, 272-275.)
Plaintiff's cited authorities, Blank v. Palo Alto-Stanford Hospital Center, supra, 234 Cal. App.2d 377, and Lewin v. St. Joseph Hospital of Orange, supra, 82 Cal. App.3d 368, are not pertinent. Neither case contains any statement that a full evidentiary type hearing is required.
In the Blank case, "... prior to the opening of the new hospital ... the Board of Directors ... investigated various means and ways of furnishing diagnostic x-ray services, taking into consideration, among other things, existing hospital contracts for radiology, pathology, electrocardiology and electro-encephalography, a model contract prepared by the California Hospital Association, a survey of methods or organization of radiological departments in [other states] and a publication of the American College of Radiology suggesting alternate forms of arrangements. The various possibilities were discussed at several board meetings and members of the Board of Directors talked with a number of individuals in the fields of radiology and hospital administration." (Blank v. Palo Alto-Stanford Hospital Center, supra, 234 Cal. App.2d at pp. 387-388.)
In Lewin v. St. Joseph Hospital of Orange, supra, 82 Cal. App.3d at pages 379-380, the court noted that several "notice-and-comment-type" hearings were held wherein the various options were discussed by interested persons.
The record herein reveals a similar course of conduct. The hospital's decision to go to an exclusive radiological medical services contract was *77 made after a number of meetings were held at which interested persons, including plaintiff, could and did express their opinions. Also, the subsequent decisions to renew the contract were made both after interested persons were again afforded an opportunity to express their views and after an evaluation was made of the Roseville X-ray Medical Group's performance under the contract.
The judgment is affirmed.
Puglia, P.J., and Janes, J., concurred.
A petition for a rehearing was denied December 3, 1979, and appellant's petition for a hearing by the Supreme Court was denied January 30, 1980. Bird, C.J., was of the opinion that the petition should be granted.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] This section provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."
[2] Only through application of a balancing test are the California decisions consistent. Exclusive sales or marketing agreements are not per se against public policy if no significant impairment of free market activity obtains from the agreement. (Great Western etc. v. J.A. Wathen D. Co. (1937) 10 Cal.2d 442, 449-450 [74 P.2d 745]; California etc. Assn. v. Rindge L. & N. Co. (1926) 199 Cal. 168, 183 [248 P. 658, 47 A.L.R. 904]; Schwalm v. Holmes (1875) 49 Cal. 665, 669; Boughton v. Socony Mobil Oil Co. (1964) 231 Cal. App.2d 188, 192 [41 Cal. Rptr. 714]; Rolley, Inc. v. Merle Norman Cosmetics (1954) 129 Cal. App.2d 844, 851-852 [278 P.2d 63, 282 P.2d 991].) Agreements which enable the parties to control the market or make one party unable to practice a trade are unenforceable. (Overland Pub. Co. v. H.S. Crocker Co. (1924) 193 Cal. 109, 112 [222 P. 812] [association of printers controlled over 90 percent of local market]; Coombs v. Burk (1919) 40 Cal. App. 8, 10 [180 P. 59] [utility customers forced to buy all gas if appliances connected by utility]; Morey v. Paladini (1922) 187 Cal. 727, 737 [203 P. 760] [exclusive right to sell lobsters from Mexico during season when no lobsters are taken in California waters]; Hunter v. Superior Court (1939) 36 Cal. App.2d 100, 113 [97 P.2d 492]; Haas v. Hodge (1959) 171 Cal. App.2d 478, 482 [340 P.2d 632] [prohibition against engaging in medical practice within 25 miles of prior partnership office without payment for good will]; Beatty Safway Scaffold v. Skrable (1960) 180 Cal. App.2d 650, 652, 656 [4 Cal. Rptr. 543] [exclusive scaffolding sales agreement in two counties for three years after termination of agreement without payment for good will].)

"The modern trend of authorities ... is to construe such statutes [such as Bus. & Prof. Code, § 16600], and contracts between individuals intended to promote rather than to restrict a particular business, `In the light of reason and common sense' so as to uphold reasonable limited restrictions. (Great Western Distillery Products, Inc. v. John A. Wathen Distillery Co., [(1937)] 10 Cal. (2d) 442, 446 [74 Pac. (2d) 745].)" (Keating v. Preston (1940) 42 Cal. App.2d 110, 123 [108 P.2d 479]; also see Grogan v. Chaffee (1909) 156 Cal. 611, 615 [105 P. 745]; Boughton v. Socony Mobil Oil Co., supra, 231 Cal. App.2d 188, 191-192.)
"`Public welfare is first considered, and if it be not involved, and the restraint upon one party is not greater than protection to the other [party] requires, the contract may be sustained. The question is whether, under the particular circumstances of the case, and the nature of the particular contract involved in it, the contract is, or is not, unreasonable.' [Gibbs v. Consolidated Gas Co. (1889) 130 U.S. 396, 409 (32 L.Ed. 979, 984, 9 S.Ct. 553, 557).]" (Grogan v. Chaffee, supra, 156 Cal. 611, 615; Great Western etc. v. J.A. Wathen D. Co., supra, 10 Cal.2d 442, 448-449.) Moreover, "`[t]he rule making void contracts in restraint of trade is not based upon any consideration for the party against whom the relief is sought, but upon considerations of sound public policy.' (See ... Continental Car-Na-Var Corp. v. Moseley [(1944)] 24 Cal.2d 104, 110 [148 P.2d 9]; Morey v. Paladini [(1922)] 187 Cal. 727, 736-738 [203 P. 760].)" (Swenson v. File (1970) 3 Cal.3d 389, 394 [90 Cal. Rptr. 580, 475 P.2d 852].)