THE ANNE ARUNDEL GENERAL HOSPITAL, INC.
ET AL. *v.* DAVID S. O'BRIEN ET AL.

[No. 1641, September Term, 1980.]

*Decided July 13, 1981.*

The cause was argued before THOMPSON, MOYLAN and LISS, JJ.

*Robert V. Barton, Jr.,* with whom were *Paul R. DeMuro* and *Ober, Grimes & Shriver* on the brief, for appellants.

*Glenn A. Mitchell,* with whom were *Catherine R. Baumer, James A. McGuire* and *Stein, Mitchell & Mezines* on the brief, for appellees Frazier, Cerny, Smith and Brown. *Abel J. Merrill,* with whom were *Thomas M. Downs* and *Blumenthal, May, Downs & Merrill, P.A.* on the brief, for appellee Friedman. *Richard Bloch,* with whom were *Shiling & Bloch, P.A.* on the brief, for appellee O'Brien. *William A. Franch, L. Dale Burgmeier* and *Goldsborough, Franch & Collett, P.A.* on the brief for appellee Brown.

LISS, J., delivered the opinion of the Court.

On June 30, 1980, four radiologists, Robert W. Frazier, M.D., Matthew J. Cerny, Jr., M.D., Joseph F. Smith, M.D., and Stephen R. Brown, M.D.,[1] and their professional association, including each of the named doctors (hereinafter the "Frazier P.A."), filed a bill of complaint in equity in the Circuit Court for Anne Arundel County against the Anne Arundel General Hospital, Inc. (hereinafter the "Hospital"), the Hospital's administrator, Carl A. Brunetto (hereinafter "Brunetto"), Barry H. Friedman, M.D., (hereinafter "Friedman") and Barry H. Friedman, M.D., P.A. (hereinafter the "Friedman P.A.").

David A. O'Brien (hereinafter "O'Brien") and his professional association (hereinafter the "O'Brien P.A.") filed a

---

[1]. We were advised at oral argument that the Hospital and Stephen R. Brown, M.D. and his professional association have settled their dispute and an appropriate order has been filed.

similar declaration in law against the same defendants. The bill of complaint and declaration alleged breach of contract, equitable estoppel, interference with business relationship, violation of federal and state antitrust laws, fraud, and violation of due process. The plaintiffs sought ex parte interlocutory and permanent injunctive relief, damages, and prayed a jury trial. On June 30, 1980, the court issued orders denying the requests for ex parte injunctive relief. On July 25, 1980, the action filed in equity was transferred to law and the two cases were consolidated.

On August 18, 1980 a seven-day evidentiary hearing was held on the radiologists' request for an interlocutory injunction. At this hearing the plaintiffs requested the court to require the Hospital to reinstate their privileges at the Hospital pending the final disposition of the case and further sought to have the court require the Hospital to grant the radiologists a hearing on their entitlement to privileges at the Hospital. By memorandum and order the trial court directed the Hospital to grant the radiologists a hearing on the question of their right to privileges at the Hospital; but denied their requests for temporary reinstatement and denied interlocutory injunctive relief as to Brunetto, Friedman and the Friedman P.A.

The trial court based its decision on the following four reasons:

1. The Hospital's bylaws guarantee a due process hearing whenever privileges are terminated.

2. The Fourteenth Amendment right to due process protects the radiologists against termination without a hearing.

3. Substantive due process required the Hospital to demonstrate that the termination of the radiologists' privileges was not arbitrary and capricious.

4. A hearing granted O'Brien in a prior privilege dispute set a precedent for granting a hearing to the radiologists.

From these judgments, appeals and cross-appeals were noted.

In the interest of clarity we shall indicate the status of the parties in these appeals. The Hospital and Brunetto are

appellants and cross-appellees. Friedman and the Friedman P.A. are cross-appellees only. Frazier, Cerny, Smith, Brown and O'Brien and their several professional associations are appellees and cross-appellants.

Although the appellants raise four issues in their briefs, we conclude that a decision on one of the issues is dispositive of the others as well. That issue is:

Whether the radiologists were entitled to a hearing on their asserted right to continue to have medical staff privileges at the Hospital?

The statement of facts presented by the appellants is as follows:

Frazier, Cerny, Smith, Brown and O'Brien provided radiology coverage to the Hospital pursuant to a contract which expired on June 30, 1980 and pursuant to medical staff privileges granted by the Hospital which expired on the same date. Four of the physicians were shareholders in the Frazier P.A. O'Brien provided radiology coverage under an agreement with the Frazier P.A. The radiologists were not admitting physicians but were "hospital based physicians," i.e., they did not admit patients to the Hospital; they were not responsible for the overall care and treatment of the patient; they performed certain diagnostic tests and procedures only upon the request of the admitting physician and reported their findings to the admitting physician for his information. Both the Frazier P.A. and the O'Brien P.A. maintain offices outside the Hospital where they perform tests and diagnostic procedures upon request of physicians for non-hospitalized patients.

The Hospital is an acute, non-profit, tax-exempt community hospital, licensed by the State of Maryland and accredited by the Joint Commission on Accreditation of Hospitals. It is a provider of care under contract with the Medicare and Medicaid programs. It is a private hospital controlled by a governing board (the Board of Managers, hereinafter the "Board") elected by members of the corporation. It received certain financial assistance from Anne Arundel County, and the Federal government under the

Hill-Burton program. The defendant Brunetto is its administrator.

Friedman is a physician who (by the Friedman P.A.) contracted to provide hospital coverage as of July 1, 1980 for all "diagnostic imaging" services which includes radiology, nuclear medicine, ultrasound and computerized tomography scanning.

On January 24, 1980 the Hosptial and the radiologists entered into an agreement extending the terms of their existing contract to June 30, 1980. The extension agreement stated, in pertinent part:

> 1. The terms of the Agreement are extended until June 30, 1980 at which time it shall automatically terminate without any notice or action on the part of either the Hospital or the Radiologists.
>
> 2. It is expressly acknowledged and agreed that after June 30, 1980 there shall be no agreement in effect between the Hospital and Radiologists or between the Hospital and any physician officer, shareholder, employee or contractor of said Radiologists, unless said agreement is in writing and duly executed by the parties thereto after February 1, 1980.

No subsequent agreement was entered into and the contract expired June 30, 1980.

On the same day that the contract was extended, the Hospital Board also granted staff privileges to Frazier, Cerny, O'Brien and Smith [2] for the same time period — through June 30, 1980. This was a departure from the usual Hospital reappointment practice of granting privileges for a full medical staff year. Accordingly Brunetto sent each a special notice in addition to the standard appointment letter. Each

---

2. Brown's privileges were somewhat different. He was appointed to the medical staff for the first time in June of 1979 after being specifically notified of the then anticipated contract termination. His initial appointment was "provisional" under the medical staff bylaws and therefore subject to certain requirements for reappointment. His initial provisional appointment extended through June 26, 1980 and although he did not meet the stated requirements for reappointment, his privileges were extended for four days to June 30, 1980 at which time they expired.

radiologist signed an acceptance of the appointment and none objected to or appealed from the appointment of limited duration. On June 30, 1980 the contract and medical staff privileges expired.

On January 24, 1980 the Hospital Board appointed Friedman chief of the imaging department, after a formal selection process. The imaging department was a newly created consolidation of the former radiology and nuclear medicine departments. The terms of the Hospital's contract with the Friedman P.A. became effective July 1, 1980. The Friedman P.A. negotiated with the radiologists but never reached agreement and the Friedman P.A. contracted with other physicians.

The radiologists sent Brunetto requests for applications and subsequently requests for medical staff, privileges in radiology. He returned the applications to them citing the Hospital exclusive contract policy and the Hospital contract in effect with Friedman. The physicians requested and were permitted to appear before the Hospital's Medical Board (composed of staff physicians), to state their concerns about the status of the radiology department. The Medical Board passed a resolution communicating to the Hospital Board, among other things, concern for continuity of care of patients with respect to radiology services. The Hospital Board President had the matter investigated by a subcommittee of its Joint Conference Committee, and the Board received assurance that adequate coverage would be provided by Friedman.

In addition to the facts above stated, the appellees have included in their brief from the record the additional factual material: Frazier, at the time the controversy arose, had been performing radiological and related services and had had hospital privileges at the Hospital for nineteen years. Cerny had had privileges for thirteen years and Smith for three years. The Frazier P.A. contract between it and the Hospital was originally entered into on July 1, 1979 and continued until July 1, 1980. The hospital privileges enjoyed by the individual radiologists were also renewed from year to year. There has been no suggestion that the services

rendered by the radiologists were less than competent. Appellees contend that during the period from June to September, 1979 (when the Hospital was considering the consolidation of the radiology and nuclear departments) they were assured by the Hospital that consolidation would not jeopardize the continuation of their privileges at the Hospital.

The appellants contend that the record shows that the radiologists lost the Hospital contract as a result of the two following Hospital policy decisions: (1) to consolidate radiology and nuclear medicine into one department; (2) to appoint Friedman as chief of the new department and as contractor to provide coverage. They suggest both policy decisions were made in accord with Hospital decision-making procedures after the radiologists and other medical staff members had opportunity to present their views.

They state that since 1976, the Hospital had been concerned about problems arising from separate diagnostic imaging services (radiology and nuclear medicine). Furthermore, the Hospital desired a chief without separate outside office commitments who was agreeable to "combined billing" under Maryland Health Services Cost Review Commission rates.

The Hospital Board voted on September 27, 1979 to consolidate the two departments and on October 25, 1979 approved a plan of action. These decisions followed a recommendation of the Hospital Planning Committee as provided for by the Hospital corporate bylaws, and its special subcommittee after review and study which included: notice to all radiologists and opportunity to comment; review of letters from Cerny, Smith and Friedman; comments to the committee from all radiologists; a report by the Hospital administration; reports to the Hospital medical staff about the inception, progress and outcome of the study. The committee and the subcommittee contained physician members, one serving as chairman. The medical staff was advised of the plan of action to establish the imaging department. A

motion to express staff concern and request further study was defeated at a medical staff meeting.

After the new department was established, the Hospital Board selected Friedman as its chief. A selection committee of the Hospital Board President, the administrator and the President of the Medical Staff solicited expressions of interest and formal applications, reviewed applications, interviewed the applicants (Friedman and Smith, twice), and unanimously recommended Friedman. All radiologists but Frazier applied. None of the applicants complained about the fairness of the selection process.

All of the parties to this appeal agree that the Hospital has the right to establish and implement a policy of providing hospital based diagnostic services by means of an agreement with a contracting physician to the exclusion of noncontracting physicians.

In *Radiology Professional Corporation v. Trinidad Area Health Association, Inc.,* 195 Colo. 253, 577 P.2d 748 (1978), the Colorado court, in upholding an exclusive contract between a hospital and an association to provide radiological services, stated:

> Contracts which limit the use of a hospital's facilities to certain specialists or which provide that all services of a particular type required by hospital patients be performed by the contracting specialists have been upheld by courts which have considered their validity. [Citations omitted.] 577 P.2d at 751.

In *Blank v. Palo Alto-Stanford Hospital Center,* 234 Cal. App. 2d 377, 44 Cal. Rptr. 572 (1965), the court stated:

> [a]n examination of the nature of the speciality of radiology, of the hospital's responsibility for providing radiological diagnostic facilities, and the manner in which the Hospital Center's Board resolved the question of how to furnish such facilities, sustains the trial court's findings that "the exclusive contract method of operating the Palo Alto Diagnostic X-ray Department was, and is, a reasonable and proper method of operating the department. * * *" 44 Cal. Rptr. at 578.

*See also Letsch v. Northern San Diego County Hospital District,* 246 Cal. App. 2d 673, 55 Cal. Rptr. 118 (1966).

Appellees do not challenge the Hospital's right to enter into exclusive radiology contracts especially since their own professional association was granted these exclusive rights in their original contract with the Hospital. Rather, the appellees challenge the termination of their hospital privileges which they contend exist separate and apart from the exclusive contract entered into between Friedman P.A. and the Hospital. Appellees urge that these privileges cannot be extinguished except in conformity with the procedural and substantive due process requirements prescribed by the Hospital's corporate and Medical Staff bylaws, which are binding on the Hospital. They cite in support of this contention Article V, Section 6 of the corporate bylaws of the Hospital which provide in pertinent part as follows:

> [The Board of Managers] ... shall have power to terminate or suspend privileges granted to physicians and to terminate employment of all hospital personnel after the giving of notice and an opportunity for a hearing in compliance with due process requirements.

It is well settled that hospital bylaws have the force and effect of an enforceable contract. *Berberian v. Lancaster Osteopathic Hospital Association, Inc.,* 395 Pa. 257, 149 A.2d 456 (1959); *St. John's Hospital Medical Staff v. St. John Regional Medical Center, Inc.,* 245 N.W.2d 472 (S.D. 1976).

Our independent review of the Hospital's bylaws convinces us that the elaborate procedure for hearing and review set out in Article IX of the bylaws [3] does not apply to this proceeding. The article which is titled "Fair Hearing Plan and Appellate Review Procedure" contemplates the initiation of an adverse recommendation as to a practitioner

---

3. Article IX, Section 2.1.a. of the Medical Staff bylaws provides that any practitioner who receives notice from the AAGH Administrator that his appointment or status as a member of the staff or the exercise of his clinical privileges will be adversely affected shall be entitled to a hearing before an ad-hoc committee of the Medical Staff ...

which would result in an unfavorable decision on his status as a member of the staff or his right to exercise clinical privileges at the Hospital. The provisions for hearing and appeal which are set out in Article IX of the bylaws are intended to guarantee due process review by the Board of Managers, the Medical Staff, and the Medical Board of any adverse recommendation.

It seems clear to us that this procedure presupposes notification to the practitioner that he has failed in his duties to the Hospital, his patients, or in the competent practice of medicine. Obviously a doctor faced with charges of this kind must be given a due process opportunity to defend himself. The case here at bar, however, does not fit into that category. Here Frazier and the other radiologists had an exclusive contract with the Hospital which protected them from competition from other competent radiologists. The contract had a date certain as to when it began and when it was to terminate. By agreement between the parties the exclusive contract was renewed until July 1, 1980 and it is not disputed that the Frazier P.A. was to retain exclusive contractual rights until that date. At the same time, another agreement was executed between the parties which clearly stated that the appellees' privileges were to be extended only for the same six-month period as their exclusive contract. Appellees made no objections to these agreements at the time they were executed. It was not until after Friedman and the Friedman P.A. were selected to head the newly formed Department of Imagery that the appellees contended that the exclusive contract and staff privileges were separate and distinct from each other. We do not agree with this contention. Appellees concede that the Hospital had a legal right to enter into an exclusive contract with Friedman and his professional association to provide the services required to implement the newly formed Department of Imaging. It necessarily follows that under these circumstances the Hospital had no obligation to grant privileges to radiologists who might compete with the Friedman Association.

We find no merit in appellees' complaint that Friedman's negotiations with Frazier and the other radiologists

amounted to less than good faith bargaining. The trial judge, in his memorandum opinion, recognized the problems facing the newly established Department of Imaging when he denied the interlocutory injunction sought by Frazier and the other appellees. He stated the following reasons for denying the injunction:

> It would be imprudent to force five radiologists on a Department of Imaging that has been functioning as a unit for a mere two months. By the time a suitable schedule is worked out between the parties, the Plaintiffs will be back in court for a determination on the merits. The Court believes that until such a determination, the Department of Imaging will operate more efficiently without the addition of the Plaintiffs.
>
> The consequence of any hardship to the Hospital is passed on to the public. Common sense dictates that when two groups with demonstrated animosities are forced to work together pending resolution of their dispute in a judicial forum, the public interest will be jeopardized.

Appellees cite a number of cases in support of their contention that when a physician's hospital privileges are affected, physicians are entitled to a due process hearing upon the failure of the hospital to renew their privileges.

They rely heavily on *Christhilf v. Annapolis Emergency Hospital Association, Inc.,* 496 F.2d 174 (4th Cir. 1974), *vacated and remanded on other grounds,* 552 F.2d 1070 (4th Cir. 1977). An examination of this case, however, clearly establishes that *Christhilf* was denied a continuation of medical staff privileges on the basis of thirty-two alleged improper procedures in his exercise of his privileges at the hospital. No hearing was held, nor was there an adjudication of these allegations. The United States Court of Appeals 4th Circuit held that there was a lack of due process and stated in support of its conclusion:

> The fundamental requisite of due process of law is the opportunity to be heard. Grannis v. Ordean,

234 U.S. 385, 394, 34 S. Ct. 779, 783, 58 L. Ed. 1363 (1914). And the right to a hearing embraces an "adequate opportunity . . . to defend. . . ." *Louisville and Nashville R. R. Co. v. Schmidt,* 177 U.S. 230, 236, 20 S. Ct. 620, 44 L. Ed. 747 (1900).

Factually, *Christhilf* and the case at bar are substantially different. No suggestion is made that the radiologists were in any way incompetent or failed to conduct themselves properly while their contract with the Hospital was in effect. There is nothing to defend. The facts are that an exclusive contract with Frazier P.A. has expired and a new exclusive contract has been negotiated with Friedman's P.A. The requirement that the Hospital hold a hearing on what is essentially a management decision vested in the several governing boards of the private hospital was not contemplated by the charter and bylaws of the Hospital.

Appellees contend that *Ascherman v. San Francisco Medical Society,* 39 Cal. App. 3d 623, 114 Cal. Rptr. 681 (1974) is controlling in this case. We disagree. *In Ascherman,* the court held that a hearing should be granted in all cases where a doctor is being considered for appointment or reappointment to the hospital staff. However, it must be noted that no exclusive contract was involved in *Ascherman.* The significance of this fact is clear when we note that the same California court has held differently in cases where an exclusive contract existed. *See Centeno v. Roseville Community Hospital,* 107 Cal. App. 3d 62, 167 Cal. Rptr. 183 (1979), where the California Court of Appeals, in refusing to invalidate an exclusive radiology contract, stated: "Indeed, in every case brought to our attention in which a hospital's operation of a facility on a 'closed-staff' basis was challenged, the decision of the governing authority of the hospital has been upheld." [citations omitted.] [167 Cal. Rptr. at 186-87.] *See also Lewin v. St. Joseph Hospital of Orange,* 82 Cal. App. 3d 368, 146 Cal. Rptr. 892 (1978), where the same court held:

A managerial decision concerning operation of the hospital made rationally and in good faith by the board to which operation of the hospital is

> committed by law should not be countermanded by
> the courts unless it clearly appears it is unlawful or
> will seriously injure a significant public interest.
>
> Judges are untrained and courts ill-equipped for
> hospital administration, and it is neither possible
> nor desirable for the courts to act as supervening
> boards of directors for every nonprofit hospital cor-
> poration in the state. [82 Cal. App. 3d at 385.]

In the light of the Hospital's decision to (1) operate its
radiology and nuclear medicine facilities in a joint facility to
be known as the Department of Imaging; (2) its further deci-
sion to enter into an exclusive contract with the Friedman
P.A.; and (3) the expiration of its previously existing exclu-
sive contract with the Frazier P.A. and the medical staff
privileges granted to the several radiologists, we find no
basis for the trial court's decision requiring a hearing to be
held.

Nor do we agree with the lower court's holding that the
radiologists had a "clearly implied promise of continued
employment," which prohibited termination absent a due
process hearing. The trial judge relied on *Mondell v. Mayor
and City Council of Baltimore,* 356 F. Supp. 76 (D. Md.
1973). In *Mondell,* the Court relied on *Board of Regents v.
Roth,* 408 U.S. 564, 92 S. Ct. 2709 (1972); however, a
scrutiny of the facts in *Mondell* convinces us that case is not
apposite to the case at bar. In *Mondell,* the plaintiff was a
civil service employee subject to the civil service provisions
of the Baltimore City Charter. There was no termination
date for her employment in her contract. When the facts in
*Roth, supra,* are examined it is clear that the lack of a ter-
mination date was an important factor in the court's
ultimate decision. The Supreme Court in *Roth* pointed out
that the only question before it was whether Roth had a
constitutional right to a statement of reasons and a hearing
on the University of Wisconsin's decision not to rehire him
at the expiration of his contract for a year. In discussing the
significance of the expiration of Roth's contract, the Court
stated:

Just as the welfare recipients' "property" interest in welfare payments was created and defined by statutory terms, so the respondent's "property" interest in employment at Wisconsin State University-Oskosh was created and defined by the terms of his appointment. Those terms secured his interest in employment up to June 30, 1969. But the important fact in this case is that they specifically provided that the respondent's employment was to terminate on June 30. They did not provide for contract renewal absent "sufficient cause." Indeed, they made no provision for renewal whatsoever. [408 U.S. at 578.]

The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. * * * In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's "good name, reputation, honor, or integrity" is at stake. [Id. at 573.]

In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment. [Emphasis in original.] [Id. at 578.]

*See also Sament v. Hahnemann Medical College and Hospital of Philadelphia,* 413 F. Supp. 434 (E.D. Pa. 1976), *aff'd,* 547 F.2d 1164 (3d Cir. 1977).

The record discloses that even the radiologists admit that there was never any direct promise of employment at the

expiration of their contract. They knew that their future privileges, if any, were dependent on their ability to negotiate an agreement with Dr. Friedman. Dr. O'Brien testified as follows:

Q. [Mr. Barton] * * * was it your understanding in January of 1980 that in order for you to get privileges in the imaging department you would have to negotiate with Dr. Friedman?

A. [Dr. O'Brien] Well, I tried every way I could to negotiate a contract with Dr. Friedman, yes.

Q. Well, that was your understanding then, in January of 1980?

A. That's correct.

Q. And that if you didn't negotiate an agreement with Dr. Friedman, then you wouldn't get privileges?

A. I would assume so if that was a requirement in the contract with him, that's right.

Our own review of the record convinces us that the appellees did not have a clearly implied promise of continued employment.

The corporate bylaws of the appellant Hospital Article V, Section 6, gives the Board of Managers full power and authority to manage the business and property of the Corporation without limitation or restriction. The Board has the sole power to select and grant privileges to physicians to practice in the hospital and the terms and conditions of the privileges. Appellees urge that the following language guarantees them a hearing in compliance with due process requirements when privileges are terminated or suspended. The pertinent sentence provides as follows:

It shall have power to terminate or suspend privileges granted to physicians and to terminate employment of all Hospital personnel after the giving of notice and opportunity for a hearing in compliance with due process requirements.

The Court of Appeals has recognized that "due process does not necessarily mean judicial process." *Burke v. Fidelity Trust Co.*, 202 Md. 178, 96 A.2d 254 (1953). In *Chevy Chase Village v. Montgomery County Board of Appeals*, 249 Md. 334, 239 A.2d 740 (1967), the Court stated the established Maryland law that where the determinations to be made are quasi-legislative or administrative, there is no constitutional need for a hearing. We find that the appellees have in fact had the hearing to which they were entitled under the corporate bylaws. They were granted an opportunity to be heard on the substantive decision by the Hospital to create the consolidated department and each of them was given an opportunity to apply for the position as chief of the department. The Frazier P.A. and the Friedman P.A. were both considered before the exclusive contract was awarded to the Friedman P.A. They knew from the contracts which they had previously executed that their privileges and their exclusive contract expired as of July 1, 1980. All of the substantive decisions had been made by the duly authorized Board of Managers and the Medical Board of the Hospital. By the time the appellees made their application for staff privileges there was nothing left to be decided. The Hospital had decided to go with the newly consolidated department, and to grant Friedman's P.A. exclusive operation of that department. To suggest that a hearing was required on the question of granting competing privileges in the face of the exclusive agreement is in our opinion to suggest an exercise in futility.

Appellee/cross-appellant O'Brien suggests that he stands in a different position than the other appellees because O'Brien's privileges did not expire with the expiration of the co-plaintiffs' contract with the Hospital. O'Brien was not a party to the contract and his privileges were not conditioned on the continuation of that agreement. We do not agree. The record shows that O'Brien was entitled to exercise his privileges during the exclusive contract with Frazier P.A. only on the basis of an agreement required by the Hospital that he accept a proportionate share of the fees paid to Frazier P.A. He admitted that when the Frazier P.A.'s exclusive

contract terminated and the Friedman P.A. was selected as the exclusive agency to provide the services to be rendered by the Imaging Department, he would not be granted privileges if he didn't negotiate an agreement with Dr. Friedman. We do not find that the previous record of O'Brien's dispute with the Hospital concerning the granting of privileges required that O'Brien be treated any differently than the other appellees in this case.

We conclude that the Hospital acted within the provisions of its charter and bylaws when it decided to consolidate its radiology and nuclear medicine departments in a new Department of Imaging. We hold that the Hospital had a right to adopt the policy which provides its diagnostic imaging services by means of an exclusive contract which excluded qualified physicians, including those who previously held the contract. We hold further that the appellees' rights under their contract and their privileges at the Hospital expired by agreement on the date certain agreed upon by the parties. The appellees were given due process during the administrative procedures in which the Hospital made its decision as to the consolidation of the Department of Imaging; and the selection of the physician to head the department; and the exclusive contract negotiated with the Friedman P.A. The appellees were not deprived of any property right, nor has any breach of duty to the public been suggested. Each of the appellees has radiological practices independent of the Hospital, and there was no showing of irreparable harm which justified the trial judge's granting of the interlocutory relief of a hearing. We conclude that it was error on the part of the trial judge to issue an interlocutory injunction granting the appellees a hearing within 30 days from the date of his order. We affirm the remaining portions of the order for the reasons we have stated.

> *Interlocutory order affirmed in part, reversed in part, costs to be paid by appellees.*