[Civ. No. 35432. Second Dist., Div. One. June 17, 1970.]

KATHRYN M. LESH, Plaintiff and Appellant, v.
DAVID KIRBY LESH, Defendant and Respondent.

884

**COUNSEL**

Young & Young and Walter H. Young for Plaintiff and Appellant.

Clark & Kunert and Stanley D. Clark for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—In December of 1949 plaintiff secured an interlocutory decree of divorce from defendant which, among other provisions, approved a property settlement agreement between the parties entered into three months earlier; these provisions were made binding by the terms of the final judgment entered in January of 1951. More than 17 years later (in July of 1968) plaintiff, by way of an order to show cause, applied for a writ of execution under section 685, Code of Civil Procedure, asserting that the sum of $37,431.09—$10,000 by way of principal, the rest being compound interest—was due her under paragraph 6 of the agreement; she also asked for attorneys' fees and costs. Following a hearing during which oral and documentary evidence was received, the court denied plaintiff's application for the writ, also her request for attorneys' fees and costs. She appeals from this order.

Paragraph 6 of the agreement was but one of several paragraphs in which provision is made for division of the community assets as well as for maintenance of plaintiff and the parties' two children, then aged 12 and 6 years. It reads as follows: "That the husband shall pay to the wife, out of distributions received by him from the copartnership known as 'Better Gardens', and in the manner hereinafter stated, the sum of Ten Thousand Dollars ($10,000.00) as and for the wife's community interest in said partnership.

"That in event of the death of the husband, he or his estate will be entitled to receive from the surviving partners the amount provided to be paid under and according to the terms and provisions of said partnership agreement, and that from the first moneys thus becoming payable to the husband, or to his estate, the wife shall be paid and shall be entitled to receive for her own use, the said sum of Ten Thousand Dollars ($10,000.00), less such sum or sums as the husband shall have paid to the wife, on account thereof, during his lifetime.

"That the husband shall be entitled to receive salary which may from time to time be paid to him by said copartnership, but in event cash distributions shall be made from time to time by said copartnership such cash distributions, exclusive of salary, shall be divided equally between the husband and

wife, and one-half thereof paid to the wife until the wife shall have received the aggregate total of Ten Thousand Dollars ($10,000.00) as and for her community interest in said partnership, as herein provided for.

"That in event said partnership shall be liquidated, or said business sold, the wife shall in like manner be entitled to receive out of the first moneys distributed to the husband, such sum or sums as shall be required to make up the aggregate total of Ten Thousand Dollars ($10,000.00), on account of the wife's community interest in said partnership herein agreed to be paid to her."

Section 685, *supra,* provides that after the lapse of 10 years from its entry, the judgment may be enforced by the court in the manner here sought upon due notice to the judgment debtor, accompanied by an affidavit setting forth the reasons for failure to proceed in compliance with section 681, which latter statute authorizes the issuance of a writ of execution when applied for within 10 years after entry of the judgment. As required by section 685, the following reasons were listed by plaintiff for failure to proceed under section 681: the partnership, known as "Better Gardens," was formed in July of 1946, consisting of three partners—Neal Campbell, S. C. Ambler and defendant; in September of 1965 the partnership business was taken over by, and became a part of, "Better Gardens, Inc." the capital stock of which corporation was then acquired by defendant; that the above transactions constituted a liquidation of the partnership and a distribution of its assets to the husband within the meaning of paragraph 6, and that no part of the sum of $10,000 due plaintiff thereunder has been paid. It was further alleged by plaintiff that defendant borrowed $925 from her in January of 1952 (which he repaid); that in September of 1953 he borrowed $3,550 from her and her sisters, giving his promissory note therefor and between July of 1954 and September of 1955 he repaid the sum of $2,100 on said note, the balance of which is still owing; "That on numerous occasions defendant has informed plaintiff that she should consider the said sum of $10,000 as being invested in said business and that the said sum was earning interest"; that "on innumerable occasions since the entry of the Interlocutory Judgment of Divorce" she was told by defendant that he intended paying all sums due her, but that he was unable to do so because there were no distributions from the partnership; "that all he was getting out of the partnership was salary and he needed that to live on; that the partnership was not making money; that he wished he could pay her but that he could not as he was having all he could do to support himself and the children of the parties; that his other partners wanted to 'plough' everything back into the business in order to build the business and that unless this was done he would be unable to support the minor children of the parties and that the partnership would go broke." Finally, it was alleged by plaintiff that the effect of the

property settlement agreement, merged into the interlocutory judgment, was to make the defendant an express trustee of all distributions, other than salaries, received from the partnership; by virtue of said trust, and upon liquidation of the partnership as above alleged, she was entitled to the agreed principal sum ($10,000) plus interest compounded annually at 7 percent from December 2, 1948, and totalling $37,431.09.

At the hearing upon the order to show cause both parties testified and numerous exhibits were received in evidence. Therefrom it appears that in 1953 plaintiff consulted an attorney, Mr. Vincenti, who contacted the defendant and wrote him several letters; also contacted by letter was defendant's attorney, Mr. Rinehart. Plaintiff testified that at all times Vincenti acted with her approval and consent. On May 4, 1954, Vincenti's letter to defendant included the statement that there had been distributions pursuant to paragraph 6 of $4,660 from which his client was entitled to one-half ($2,330); acknowledging that "you have paid the sum of $950.00," the attorney stated that a balance of $1,380 thus remained due on distributions up to that date. In the same letter Vincenti requested that defendant provide security for plaintiff by a second mortgage on his home, hypothecation of his partnership interest, and a chattel mortgage on cymbidium orchids the defendant was raising. Defendant refused to give any of the requested security; he did, however, provide plaintiff with a document dated "April 1954" and signed by his partners. Among other things, the document stated that the partners were to pay "to my former wife, Kathryn M. Lesh, one-half of any and all such cash distributions to which I may be entitled, up to the aggregate sum of Ten Thousand Dollars ($10,000.00) . . . ." It concluded with the statement that "This order is irrevocable and you will act in accordance therewith unless the same may be revoked or altered by joint act of myself and the said Kathryn M. Lesh, and evidenced by a written agreement lodged with you." On September 15, 1954, Vincenti wrote defendant's partners, stating that "Mr. Lesh has provided his former wife with a document upon which appears your two signatures, a copy of which document I enclose herewith." Continuing, "This letter is intended to notify each of you that Mrs. Kathryn M. Lesh has this document and relies thereon and shall expect each of you to comply with the terms thereof and to be responsible that no distributions are made from the partnership between yourselves and Mr. Lesh, except in accordance with the terms thereof." The same date (September 15) Vincenti sent plaintiff a copy of this last mentioned letter, concluding with this statement, "If you wish me to again review this matter with Mr. Lesh approximately a year from this date I will expect you to request me to do so and will not automoatically [sic] take it up with Mr. Lesh as I have mentioned in my letter to him."

After receipt of Vincenti's letter, plaintiff admittedly was advised by him

in August of 1955 that he was leaving the practice of law to become president of a savings and loan association. She testified, however, that thereafter she did nothing except make verbal demands on defendant until consulting her present attorney in the middle of 1968, an interval of some 13 years; to such verbal demands defendant replied that the profits of the partnership were being "ploughed back" into the business, that he was without funds and that she could not get "blood from a turnip." At no time, plaintiff admitted, did she ever make an investgiation of defendant's assets, although she knew that he owned certain real property and had seen him drive new cars on separate occasions. As for defendant's partners, she testified that she saw them from time to time in the partnership store but never asked for an accounting: "Q. [by defendant's counsel]: Did you ever ask either of them if any cash distributions had been made after 1954? At any time after 1954, did you ask either of them if any cash distributions had been made by the partnership? A. I didn't talk to them. Q. I take it you never wrote them any other letters, other than the letter written for you by Mr. Vincenti? A. No."

It is undisputed that withdrawals from the business were made from January of 1950 through April of 1958, the amounts received by defendant aggregating $24,660 of which more than $20,000 had been paid by June of 1957.

■ Unlike an application pursuant to section 681, Code of Civil Procedure, where the creditor is entitled to the writ as a matter of right, under section 685 (here invoked) he must have used diligence in attempting to enforce the judgment prior to the expiration of the statutory period of 10 years. While he need not show *extreme* diligence, but only *due* diligence (*Shapiro* v. *Cahill,* 219 Cal.App.2d 772, 775 [33 Cal.Rptr. 601]), it is settled that whether due diligence has been exercised is for the determination of the trial court whose decision will not be disturbed on appeal in the absence of a clear abuse of discretion. (*Georgison* v. *Georgison,* 43 Cal.2d 550, 552 [275 P.2d 3].) ■ As further stated in *Beccuti* v. *Colombo Baking Co.,* 21 Cal.2d 360, 363 [132 P.2d 207], "if the facts show of a certainty that, had the judgment creditor exercised even slight diligence in making inquiry concerning the circumstances of the judgment debtor, he would have discovered property subject to execution, the exercise of sound discretion requires the court to deny the motion." ■ As shown above, plaintiff admitted knowledge of leviable real and personal property owned by defendant other than his share of the profits from the partnership; with respect to these latter assets, through her attorney she acknowledged receipt of $950 in 1954 or earlier. Thereafter, although she admitted being on the premises owned by the partnership after receipt of the document signed by defendant's partners, she made no inquiry of them concerning any cash dis-

tributions from the business. Any fair evaluation of such evidence warranted a finding that due diligence was not used; indeed, under *Beccuti* it would have been error to find otherwise. Finally, it avails plaintiff nothing for her to assert that she relied on defendant's promises and representations, false though they were; as pointed out in *Lundgren* v. *Lundgren*, 238 Cal.App.2d 88 [47 Cal.Rptr. 538], the parties (as here) were no longer husband and wife and there was thus no confidential relationship "by virtue of which each party had the right to expect the other to exercise the highest degree of good faith in the course of their dealings. [Citation.]" (P. 92.)

Although numerous cases are cited by plaintiff relative to the above aspect of the case, even including *Georgison,* her counsel's briefs contain several statements to the effect that she is not relying on section 685, Code of Civil Procedure, and that the trial court had no discretion to exercise in the premises. In substance her position is as follows: The distributions received by defendant under paragraph 6 were not community property until they came into his hands; citing section 15025, subdivision (2) (e), Corporations Code, money in the hands of a partner is not community property but partnership property and a mere expectancy at that (*Speer* v. *Speer,* 209 Cal.App.2d 233, 240 [25 Cal.Rptr. 729]); by refusing the writ of execution here sought the trial court modified and added new conditions to both the interlocutory and final judgments of divorce by holding, in effect, that due diligence be exercised in collecting any unpaid portion of the sum ordered by said paragraph to be paid; that the right to a writ of execution became absolute on the liquidation of the business and not subject to the trial court's discretion; and that the defendant was a trustee of the funds due his divorced wife from the partnership hence the rule does not apply that divorced spouses presumably conduct business matters at arm's length. In our opinion the circumstances at bar do not sustain the above contentions.

We first consider the claim that paragraph 6 created an express trust. It is settled that the same rules of interpretation apply in ascertaining the meaning of a judgment as in ascertaining the meaning of any other writing. (*Verdier* v. *Verdier,* 121 Cal.App.2d 190, 193 [263 P.2d 57].) It is likewise settled that the construction given a contract by the acts of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted by the courts. (*Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 761 [128 P.2d 665].) The word "trust" is not found in the instant paragraph; too, when Mr. Vincenti entered into correspondence with defendant, there is nothing in such correspondence indicative of any trust relationship between the parties to this litigation. Indeed his request that defendant give security for the obligations owing suggests a creditor-debtor relationship rather than the existence of an express trust. Why, it may be

asked, would it be necessary to impress a chattel mortgage or other encumbrance upon property to enforce the provisions of a so-called trust. ■ Furthermore, as stated in *Ilse* v. *Burgess,* 28 Cal.App.2d 654, 656 [83 P.2d 527], "It is equally well settled that a debtor cannot create a trust for the sole benefit of his creditor out of a debt which he owes without providing a fund for the purpose—that the rights under an obligation are in the obligee and the duties in the obligor, but the latter cannot be trustee of the duties owed by himself." The most that can be said about the present claim is, as in *Ilse,* that "the debtor promised to create a trust for the benefit of the creditor. No trust is created under such circumstances. [Citation.]" (P. 656.)

■ There are these further matters militating against the claim that defendant was an express trustee of the cash distributions from the business. Assuming a trust relationship ever arose, it changed in 1954 when plaintiff accepted the document furnished by defendant and signed by his partners. She informed them that she relied thereon and that she expected their compliance therewith. As stated in Mr. Vincenti's letter to the partners with respect thereto, plaintiff "shall expect you to comply wtih the terms thereof and to be responsible that no distributions are made between yourselves and Mr. Lesh, except in accordance with the terms thereof." In light of such changed circumstances, defendant ceased to be a trustee with respect to funds which would never be in his possession or control. Thereafter, and the court so noted in a memorandum of decision, plaintiff was guilty of laches: "The court is persuaded that plaintiff is not entitled to defer her application for the Writ of Execution some 14 years merely because she did not take the trouble to ask Ambler and Campbell whether or not any distribution had been made or take any other meaningful steps to ascertain the true state of affairs. To permit such a contention to prevail would place a premium on negligence and inaction."

■ There remains for consideration the point that defendant's interest in the partnership was a mere expectancy and that, until liquidation or dissolution thereof, plaintiff was powerless to assert her interest therein. *Speer* v. *Speer, supra* (209 Cal.App.2d 233), relied on by plaintiff is not applicable to the facts of this case. True, it was there held that the plaintiff husband had a mere expectancy in the assets of the partnership which was not subject to division as community property, but it was further held that "Until [the husband's] claims against the business are made enforceable by an accounting or other appropriate proceeding, they remain a mere expectancy." (P. 240.) Here the plaintiff could have availed herself of the provisions of section 15028, subdivision (1), Corporations Code, which provides that "On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other

court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts, and inquiries which the debtor partner might have made, or which the circumstances of the case may require." With respect to the availability of the section just quoted see *Baum* v. *Baum,* 51 Cal.2d 610, 613 [335 P.2d 481], and *Carmichael* v. *Carmichael,* 216 Cal.App.2d 674, 682 [31 Cal.Rptr. 514].

Since we have determined that the trial court properly exercised its discretion in denying the application for the writ, it becomes unnecessary to consider the question of plaintiff's entitlement to any interest on the principal still due.

■ The trial court also denied plaintiff's application for attorneys' fees and costs. Such action was clearly proper in view of the provisions in the property settlement agreement (paragraph 13) waiving any claim for counsel fees. (*Fox* v. *Fox,* 42 Cal.2d 49, 53 [265 P.2d 881].) Furthermore, the record reveals that the request was not pressed by plaintiff's attorney after citation of the *Fox* decision.

The order is affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied July 9, 1970, and appellant's petition for a hearing by the Supreme Court was denied August 12, 1970. Peters, J., was of the opinion that the petition should be granted.