[Civ. No. 59869. Second Dist., Div. One. July 29, 1981.]

HAROLD D. HIRSCH et al., Plaintiffs and Respondents, v.
ROBERT W. ENSIGN, Defendant and Appellant.

**COUNSEL**

Michael A. Bertz for Defendant and Appellant.

Hecht, Diamond & Greenfield and Roger Jon Diamond for Plaintiffs and Respondents.

**OPINION**

**HANSON (Thaxton), J.**—Defendant Robert Ensign appeals from a judgment of the superior court confirming an arbitration award in favor of plaintiffs/respondents Harold D. Hirsch, Stanley and Beatrice Drew and Robert Dingfelder.

## FACTS

On June 2, 1974, plaintiffs filed a civil complaint alleging six causes of action for accounting, dissolution of limited partnership, breach of

contract, misrepresentation, specific performance and declaratory relief against numerous defendants, including defendant Ensign. This litigation was settled in part and pursuant to the settlement agreement of July 19, 1978, the fifth and sixth causes of action were submitted to arbitration. The matter proceeded to an arbitration on the fifth and the sixth causes of action in December 1978, but no award was made because the arbitrator died prior to rendering a decision.

The plaintiffs, upon learning of the arbitrator's death, made a motion for a trial date and trial was set for May 23, 1979, the parties being relieved by death of the arbitrator from going ahead with arbitration. However, pursuant to stipulation of May 17, 1979, the prior settlement agreement was ratified as to the provisions for arbitration, defendant waived the provisions of the five-year statute (Code Civ. Proc., § 583) and it was agreed the time should be tolled during arbitration. Ultimately, the fifth cause of action was dismissed and the subject of arbitration was the sixth cause of action which alleged breach of contract relating solely to defendant Ensign.

On December 5, 1979, the arbitrator issued an award supported by an opinion in favor of plaintiffs. The award provided that defendant should pay plaintiffs the sum of $21,000 as follows: $7,000 to Stanley and Beatrice Drew and $7,000 each to Harold Hirsch and Robert Dingfelder respectively.

The stipulation for arbitration provided that the award would constitute the final decision and "that judgment upon the award ... may be entered by the Los Angeles Superior Court ... [in the instant case] pursuant to appropriate petition for confirmation of award of arbitrator in accordance with the California Code of Civil Procedure." Therefore, plaintiffs promptly on December 20, 1979, made application for court confirmation of the award and entry of judgment. Defendant opposed confirmation and sought an order vacating the award on the ground that the arbitration award was based on matters not submitted to arbitration and not noticed to defendant as being an issue in the case. Following argument the court on January 25, 1980, confirmed the award and formal judgment was entered February 5, 1980.

Because no reporter was present at the arbitration hearings there is no transcript of the oral proceedings and the record does not disclose what evidence was adduced at the hearing. In fact, the record relevant to this appeal consists mainly of the complaint, specifically the allega-

tions in the sixth cause of action (which incorporates certain allegations from the first and fifth causes of action); the stipulation for arbitration; the award of arbitrator, and the supporting opinion of the arbitrator filed December 5, 1979.

In their sixth cause of action the plaintiffs alleged, in substance, that in 1967 they invested $10,000 each in a limited partnership (the Ensign Company) of which defendant Ensign was the general partner. The limited partnership was formed for the purpose of developing a ski resort complex in Utah.

It is further alleged that on or about December 31, 1971, the Ensign Company purported to dissolve with consent of a majority of the limited partners; that Ensign Company and defendant Ensign ever since formation of the company had failed and refused to provide an accounting to plaintiffs; that on or about June 30, 1971, the Ensign Company sold and transferred substantially all of its assets except 23 lots in the commercial area of Park City West to Life Resources, Inc. in exchange for common stock of that company which was distributed allegedly pro rata to the limited partners; that it was represented at the time of formation of Ensign Company in 1967 that each of the limited partners including plaintiffs acquired a 2 percent unit interest in the assets and profits of the partnership and a one-third acre lot in the commercial area in exchange for their $10,000 investment; that plaintiffs are informed and believe that at the time of dissolution Ensign Company held as well as Life Resources, Inc. stock "all undistributed one-third acre lots in the commercial area of the development"; that the manner of distribution of the stock of Life Resources, Inc. to the limited partners was unfair and unequitable and that an accounting is required to ascertain the actual propriety and fairness thereof but that Ensign Company and defendant Ensign failed and refused to render such accounting.

The allegations of the fifth cause of action incorporated in the sixth cause of action further state that Ski Park City West, Inc., a Utah Corporation, (hereinafter referred to as SPCW) and Vista Del Verde, a limited partnership organized in California, both with business offices in San Clemente, California, have succeeded to and assumed the assets and liabilities of the Ensign Company; that at all times since formation of Ensign Company defendant Ensign agreed and represented that the aforesaid commercial lots committed to each limited partner would be available for selection and designation as soon as the parcel abutting on State Highway 248 at its intersection with the primary access road to

the ski area became subdivided; that Ensign Company and SPCW as owner of the parcel caused the same to be subdivided and it was legally accepted and approved by the Summit County Commission on January 7, 1970. For their investment plaintiffs each allegedly acquired, among other things, a one-third acre lot and it is specifically alleged in paragraph 36 of the complaint: "At the time of the formation of defendant ENSIGN COMPANY in 1967, defendant ROBERT W. ENSIGN represented to plaintiffs and to each of the other limited partners that each said limited partner would receive, in return for his $10,000 investment a one-third acre lot in the subdivided commercial area of the development . . . ."

Paragraphs 37, 38, 39, 40, 41, 42, 43, 44, and 45 of the complaint make extensive references to the various promises both oral and written by which defendant Ensign repeatedly reaffirmed his commitment to transfer the lots to the plaintiffs. Paragraph 40 alleges that the parties eventually entered into a partnership dissolution agreement which specifically provided for the distribution of the lots to the plaintiffs as follows: "The purposes of the partnership were accomplished and by majority consent of limited partners, all of the land holdings of the company, *except for 23 individual lots committed to limited partners* . . . were transferred to Aspen Grove, Inc. in exchange for stock of that corporation. Subsequently, and with majority consent of limited partners, the stock of Aspen Grove, Inc. was exchanged for stock of Ski Park City West, Inc."

Paragraph 44 alleges that defendant Ensign nonetheless breached the contract by refusing "to designate, distribute, transfer and convey the said subdivided commercial lots . . . ."

Finally plaintiffs by their sixth cause of action alleged that by virtue of defendant's failure to convey the lots they suffered damages "in an amount equal to the present fair market value of the commercial lots . . . " and by their prayer they requested damages in this amount.

The arbitrator in his decision in pertinent part determined: "It is the opinion of this Arbitrator that ROBERT W. ENSIGN had a duty to his limited partners to provide them with a lot upon which they could develop a project. There was ample testimony as to Ensign's continued promises to deliver a lot whenever one was ready to develop. However, it is impossible in reality to reach the point of development (required by Ensign) unless one knows which lot one is working with, i.e., you cannot

expect a potential developer to expend time, effort and money to develop a set of plans and specifications for a fictitious lot only to later find that a different lot is available. [¶] Further, the action of ROBERT ENSIGN conveys bad faith on his part as to the distribution of these lots to the Claimants." The sole aspect of the transaction involving the investment in and dissolution of the partnership which lay beyond control of the claimants but was within the control of Ensign was the receipt of the three lots. The arbitrator therefore determined the value of the property and awarded the claimants $7,000 as to each limited partnership unit.

Defendant Ensign opposed the motion for judgment on the award alleging that the arbitrator exceeded his authority in determining a matter not in issue: "Whether the condition precedent to obtaining a lot, namely being prepared to develop, is excused as being impossible or impracticable due to any inability to know which lot will be transferred until after time, effort and money is expended to develop a set of plans and specifications." Attached to defendant's pleadings, which included a motion to vacate the arbitration award on this ground, were various documents including the settlement agreement, prehearing brief of Ensign and postarbitration briefs of both parties, and application for reconsideration of award filed by defendant Ensign December 24, 1979, after the arbitrator's authority had expired which was rejected as untimely with a comment that it would have been denied on the merits.

The "Agreement of Dissolution" dated December 31, 1971, provides for retaining the 23 individual lots committed to the individual partners and further states as to distribution of the lots that "At such time as a limited partner is prepared to develop his property, he may claim his lot from lots then available in a subdivision ...." It is the arbitrator's reference to this provision upon which defendant Ensign bases his argument that the arbitrator acted in excess of his authority.

The trial court in its judgment specifically declared that it had considered the motions together with the various supporting declarations and memoranda. Good cause appearing, the court thereupon, confirmed the arbitration award by its judgment entered February 6, 1980.

ISSUES

Defendant Ensign contends on appeal that the trial court erred in confirming the award since the arbitrator acted in excess of his author-

ity in deciding the action upon an issue not submitted to him; that the award was procured by the misconduct of the arbitrator; and that, in essence, there was insufficient evidence that defendant Ensign breached his agreement to supply lots to the limited partners since there was no evidence that the condition in the dissolution agreement was either waived or excused.

## DISCUSSION

While the record before this court is meager, it is readily apparent that, initially, the motion to vacate the award which defendant Ensign presented to the trial court was deficient. A motion to vacate an arbitrator's award must be supported by an affidavit or sworn declaration. (*Beckett* v. *Kaynar Mfg. Co., Inc.* (1958) 49 Cal.2d 695 [321 P.2d 749].) The motion filed by defendant is supported by the declaration of counsel containing general statements. By contrast the specific "facts" on which defendant relies as the basis for his motion are supplied by his unilateral allegations of facts purportedly reconstructed from notes taken of the hearing which are contained in a lengthy memorandum of points and authorities. In the absence of stipulated facts, or some concurrence by counsel as to the state of the record before the arbitrator, this fact statement is inadequate for the trial court, and cannot be relied upon on appellate review for obvious reasons.

Furthermore, the trial court is limited in its authority to vacate the award of an arbitrator, even in the event of an error of fact or law. "[T]he mere fact that the arbitrator reached an erroneous conclusion based on an error in law which does not appear on the face of the record will not invalidate the award. (*Durand* v. *Wilshire Ins. Co., supra*, 270 Cal.App.2d 58, 63 [75 Cal.Rptr. 415].) On the other hand, where the error appears on the face of the award and causes substantial injustice the award may be vacated. (See *Campbell* v. *Farmers Ins. Exch., supra*, 260 Cal.App.2d 105, 111-112 [67 Cal.Rptr. 175].) We note, too, that where the arbitrator himself has admitted that he has not acted in accordance with principles of law such admission may be received as evidence before the trial court and in such case will be treated as if the error of law appears on the face of the award. (See *Jefferson Ins. Co.* v. *Superior Court, supra*, 3 Cal.3d 398, 403 [90 Cal.Rptr. 608, 475 P.2d 880]; *Allen* v. *Interinsurance Exchange, supra*, 275 Cal.App. 2d 636, 639-641 [80 Cal.Rptr. 247].)" (*Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 771 [137 Cal.Rptr. 580].)

In the present case the alleged error in law or the failure to act according to legal principles does not appear on the face of the award nor do we have any admission or statement by the arbitrator that he committed an error in law, exceeded his authority, or that he failed to make a determination according to legal principles. He in fact denied the motion to reconsider for lack of jurisdiction, adding that he would have done so on the merits in any event.

In the case at bench the arbitrator decided the overall question of whether defendant Ensign breached the contract with plaintiffs by failing and refusing to perform and/or placing it beyond his power to do so. It is well settled that neither the merits of the controversy nor the sufficiency of the evidence to support the award are generally matters for judicial review. (See, e.g., *DeMello v. Souza* (1973) 36 Cal.App.3d 79 [111 Cal.Rptr. 274]; *Morris v. Zuckerman* (1968) 69 Cal.2d 686, 691 [72 Cal.Rptr. 880, 446 P.2d 1000].) Since the award in the present case appears regular on its face and there is no showing that it produces such an obvious injustice as that in *Abbott*, there is no sufficient ground to vacate it and the trial court properly affirmed it.

In regard to defendant's arguments on the merits, despite the incomplete record several things are clear: (1) The arbitrator in order to determine the rights of the plaintiffs, who were limited partners with the Ensign Company, under the dissolution agreement, it was necessary for that document to be read and interpreted in light of the limited partnership agreement which set forth the rights and obligations of the parties; (2) among the issues presumably framed for the benefit of the arbitrator in defendant Ensign's prehearing brief is the following: "1. Were the rights to a commercial lot received by the limited partners of ENSIGN COMPANY, and as restated in the Agreement of Dissolution, conditional upon the partner being prepared to develop that lot?"; and (3) finally from defendant's purported review of the evidence adduced at the hearing it appears that the arbitrator received and paid careful attention to evidence on this issue, and this following two arbitration hearings and several years of preparation would not seem to support defendant's claim of surprise or lack of preparedness on the issue.

Finally, the arbitration award and opinion of the arbitrator are dated December 5, 1979. Plaintiffs filed their motion to confirm the award and mailed it to defendant's counsel on December 20, 1979. Under the statutes applicable to such proceedings, defendant Ensign had 15 days thereafter (Code Civ. Proc., §§ 1290.6, 1013) to file his re-

sponse. He did not file his motion to vacate until January 21, 1980, and therefore exceeded the time period.

Generally a petition to vacate or correct an award must be served and filed within 100 days after service of the award on the petitioner (Code Civ. Proc., § 1288; *Archuleta v. Grand Lodge etc. of Machinists* (1968) 262 Cal.App.2d 202 [68 Cal.Rptr. 694]) and the same limitation applies when vacation or correction is sought by response (Code Civ. Proc., § 1288.2). "[T]o this latter rule there is only one exception. When the party petitions the court to confirm the award before the expiration of the 100-day period, respondent may seek vacation or correction of the award by way of response only if he serves and files his response within 10 days after the service of the petition ([Code Civ. Proc.] § 1290.6). Unless the response is duly served and filed, under section 1290 the allegations of the petition are deemed to be admitted by respondent (*Coordinated Construction, Inc. v. Canoga Big 'A,' Inc.* (1965) 238 Cal.App.2d 313, 316-318 [47 Cal.Rptr. 749])." (*DeMello v. Souza, supra*, 36 Cal.App.3d 79, 83.)

Since pursuant to Code of Civil Procedure section 1286.8 the court may not correct or vacate an arbitration award unless a response requesting that the award be corrected or vacated has been duly served and filed, the trial court was as a matter of law barred from vacating the award in the case at bench absent a showing by defendant seeking relief under Code of Civil Procedure section 473. None appearing, the motion to vacate was properly denied because it was not timely.

### DISPOSITION

The judgment confirming the arbitration award is affirmed.

Spencer, P. J., and Lillie, J., concurred.