[No. D009990. Fourth Dist., Div. One. Apr. 24, 1990.]

SOUTH BAY RADIOLOGY MEDICAL ASSOCIATES et al., Plaintiffs and Respondents, v.
W. M. ASHER, INC., et al., Defendants and Appellants.

COUNSEL

Norman R. Allenby, Dorothy J. Almour and Hillyer & Irwin for Defendants and Appellants.

Dennis J. Wickham and Seltzer, Caplan, Wilkins & McMahon for Plaintiffs and Respondents.

OPINION

BENKE, J.—In this case a radiologist, appellant W. Michael Asher, M.D. (Asher), opposes confirmation of an arbitration award which upheld a covenant not to compete. The covenant was set forth in a partnership agreement which Asher executed. Although the validity of such a restraint on trade is reviewable by a court asked to confirm an arbitration award, like the arbitrator we find the covenant in this case is valid. Accordingly we affirm the trial court's order confirming the arbitration award.

FACTUAL SUMMARY

On January 1, 1975, Asher and another doctor formed South Bay Radiology Medical Associates (South Bay) as a partnership. The partnership was engaged in the practice of medicine and in particular radiology. Over the years the partnership expanded to include four doctors.

As of January 1, 1986, the partnership agreement contained two provisions which are pertinent to resolution of the issues before us. Paragraph 4.4 (c) provides that in valuing interest of a withdrawing or dissolving partner "No allowance shall be made for goodwill, trade names or other intangible assets; provided, however, that the remaining Partners shall be entitled to use the trade names of the Partnership. No allowance shall be made for installation of medical equipment." Paragraph 4.9 provides in part: "Neither a withdrawing, dissolving, expelled or disabled Partner nor its shareholder shall, either directly or indirectly, unless required by medical ethics,

carry on or engage in the private practice of medicine in the South Bay geographical area, including, but not limited to, Chula Vista, National City, Bonita and the Bay Hospital Medical Center's hospital district, for a period of five (5) years after the date of withdrawal, dissolution, expulsion or disability without the written consent of a majority of the remaining Partners."

Unfortunately on March 31, 1986, Asher broke his neck in a skiing accident. Although Asher largely recovered from his injuries, the accident left him unable to fully use his right thumb and right index finger. Given this disability Asher chose not to perform invasive radiological procedures such as angiography.

On October 6, 1986, the remaining partners of South Bay declared that as a result of Asher's disability he was a "dissolving partner" within the meaning of the South Bay partnership agreement. Thereafter Asher and the remaining partners were unable to agree upon a valuation of Asher's partnership interest and on July 2, 1987, the remaining partners filed a demand for arbitration of the valuation issue.

Asher filed a counterdemand for arbitration on August 2, 1987, in which, in addition to challenging the valuation being proposed by the remaining partners, he argued the covenant not to compete set forth in paragraph 4.9 of the agreement was not enforceable unless he was compensated for the value of the partnership's intangible assets, including its goodwill. He relied on Business and Professions Code sections 16600 and 16602.[1]

The arbitrator issued his award on June 21, 1988, and sent the parties a letter setting forth his reasoning on June 23, 1988. The arbitrator awarded Asher a total of $450,000. This amount was composed of the following elements: $275,000 compensated Asher for his interest in South Bay; $100,000 compensated him for amounts he could have earned as a "locum tenens" following dissolution of his partnership interest; and $75,000 was awarded to Asher as attorney fees.

The arbitrator's award states it is in settlement of all claims submitted to arbitration except claims related to a corporation which the partners owned, South Bay Imagining (Imagining). The arbitrator's letter states: "With regard to the covenant not to compete, I do not read Business and Professions Code section 16602 as requiring an express sale of, or payment for good will."

---

[1] Unless otherwise indicated, all statutory references are to the Business and Professions Code.

## Proceedings Below

Asher did not file a petition to vacate or correct the arbitrator's award. Rather, Asher filed a complaint (Super. Ct. San Diego County, 1988, No. 607058) against South Bay and the remaining partners with respect to his interests in Imagining and a related partnership, South Bay Ultrasound (Ultrasound). In addition to the claims with respect to Imagining and Ultrasound, two of the four causes of action in Asher's complaint alleged the covenant not to compete in the South Bay partnership was not enforceable.

South Bay and the remaining partners demurred to Asher's complaint. Among other matters, the demurrer argued the validity of the covenant not to compete had been resolved by the arbitrator. In conjunction with the demurrer South Bay and the remaining partners petitioned for an order confirming the arbitration award.

On March 22, 1989, Asher filed an opposition to the petition to confirm in which he again argued the partnership valuation scheme violated sections 16600 and 16602 because it did not provide him with any compensation for the value of the partnership's good will.

The trial court heard argument on the demurrer and the petition to confirm at the same time. With respect to the two causes of action in Asher's complaint which were based on the covenant not to compete, the trial court sustained the demurrer without leave to amend.[2] In a separate order the court confirmed the arbitration award.

Asher filed a timely notice of appeal from the confirmation order.

## Issues on Appeal

As he did below, on appeal Asher argues the arbitration award cannot be confirmed because it enforces an illegal restraint on trade. Because his attack on the arbitrator's decision is based on alleged illegality, he argues he was not required to file a petition to vacate or correct the award, but rather could wait until South Bay and the remaining partners attempted to enforce the award.

We agree with Asher that violation of section 16600 is the sort of illegality which will render an arbitration award void and that the defense of

---

[2] With respect to the remaining causes of action, the trial court sustained the demurrer with leave to amend. Thereafter Asher challenged the trial court's ruling on the demurrer by way of a petition for a writ of mandate (*Asher* v. *Superior Court,* No. D009918). We summarily denied the petition on April 24, 1989.

illegality may be raised at any time. However, we find no violation of section 16600. Rather we find that the covenant not to compete in the South Bay partnership is proper under section 16602. Contrary to Asher's argument, we find nothing on the face of section 16602 or its history which requires that a dissolving partner be compensated for the partnership's goodwill. Accordingly we affirm the order confirming the arbitration award.

## DISCUSSION

### I

### *Illegality Defense*

Section 16600 embodies the common law prohibition against restraints on trade. The statute provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (§ 16600.) When a contract creates an illegal restraint on trade "[t]here is nothing which the parties to the action could do which would in any way add to its validity. If the contracts upon which the judgment is based are to that extent void, they cannot be ratified either by right, by conduct or by stipulated judgment." (*Hunter* v. *Superior Court* (1939) 36 Cal.App.2d 100, 113 [97 P.2d 492]; see also *Hollingsworth Solderless Terminal Co.* v. *Turley* (9th Cir. 1980) 622 F.2d 1324, 1327.) "In declaring a contract void to the extent it exceeds such statutory limitations as those imposed by section 16600, the Legislature thereby adopted a rule of public policy." (*Centeno* v. *Roseville Community Hospital* (1979) 107 Cal.App.3d 62, 70 [167 Cal.Rptr. 183].)

Where a contract is void as against public policy, no rights "can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights." (*Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603, 610 [204 P.2d 23].) In particular "[t]he question of the validity of the basic contract being essentially a judicial question, it remains such whether it is presented in a proceeding 'for an order directing . . . arbitration' under sections 1282 of the Code of Civil Procedure or in a proceeding 'for an order confirming' or 'vacating an award' under section 1287 and 1288 of said code. . . . If it is presented in a proceeding under said section 1287 or 1288 and similar uncontradicted evidence is offered, the court should deny confirmation and should vacate any award granting relief under the illegal contract upon the ground that the arbitrator exceeded his powers in making such award." (*Ibid.*)

Although in *Loving & Evans* v. *Blick* both a motion to vacate and a motion *to* confirm were made in the trial court, the rationale the court

employed makes it clear the illegality defense may be raised for the first time in opposition to a motion to confirm. " 'The laws in support of a general public policy and in enforcement of public morality cannot be set aside by arbitration, and neither will persons with a claim forbidden by the laws be permitted to enforce it through the transforming process of arbitration.' [Citation.] To hold otherwise would be tantamount to giving judicial approval to acts which are declared unlawful by statute. [Citations.]" (33 Cal.2d at pp. 611-612.)

In sum the illegality Asher has raised, were it to be established, would constitute a defect in the arbitrator's award which would not be waived by failure to petition to vacate the award within 100 days as required by Code of Civil Procedure section 1288. ██ ██ ██ Rather under *Loving & Evans* v. *Blick* he was free to raise the alleged violation of section 16600 in response to South Bay's petition to confirm.[3]

## II

### *Partnership Agreements*

One well-established exception to the prohibition on trade restraints exists when partners are dissolving a partnership. That exception is embodied

---

[3] With due respect to the views expressed in the concurring opinion, Asher's claims under sections 16600 and 16602 were heard and resolved on the merits by the arbitrator.

First we note that although ample opportunity has existed in the context of the petition to confirm, the demurrer to Asher's complaint, and on this appeal, neither Asher nor South Bay has suggested that the arbitrator did not rule on Asher's claim under sections 16600 and 16602. Rather the record discloses that Asher raised the validity of the covenant not to compete in his counterdemand for arbitration. Asher's demand sought a "declaration that the non-competition clause be determined to be unenforceable or, in the alternative, that ASHER be awarded the present value of the intangible assets of the Partnership Agreement as part of the fair market value." As we have seen the arbitrator's award states that it settles *all* disputes submitted to arbitration. Since the award did not invalidate the covenant or award compensation for intangible assets, we interpret the award as denying the relief requested in Asher's counterdemand.

If we had any doubt the arbitrator in fact reached the merits of Asher's claim under sections 16600 and 16602, we would, of course, be free to resolve those doubts by reference to the same rules of interpretation used in ascertaining the meaning of any other writing. (*Verdier* v. *Verdier* (1953) 121 Cal.App.2d 190, 193 [263 P.2d 57]; *Lesh* v. *Lesh* (1970) 8 Cal.App.3d 883, 890 [87 Cal.Rptr. 632].) In particular we may rely upon the arbitrator's own contemporaneous interpretation of the award. (*Verdier* v. *Verdier, supra,* 121 Cal.App.2d at p. 193.) Here the arbitrator's letter of explanation states the arbitrator's finding that section 16002 does not require payment for goodwill. Needless to say, we believe this statement is persuasive evidence the arbitrator believed his award in fact reached the merits of the section 16602 claim set forth in Asher's counterdemand.

In sum, because we cannot interpret the arbitrator's rejection of Asher's counterdemand as anything other than a ruling on the counterdemand, we do not believe we are in a position to ignore Asher's request for appellate review of that ruling.

in section 16602 which provides: "Any partner may, upon or in anticipation of a dissolution of the partnership, agree that he will not carry on a similar business within a specified county or counties, city or cities, or a part thereof, where the partnership business has been transacted, so long as any other member of the partnership, or any person deriving title to the business or its goodwill from any such other member of the partnership, carries on a like business therein."

Originally set forth as Civil Code section 1675, the exception for dissolving partners has been codified in California since enactment of our Civil Code in 1872. In its original form the exception provided: "Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same city or town where the partnership business has been transacted, or within a specified part thereof." The commentators' note to the original enactment states in part: "An agreement of this description, operating equally upon all the partners, gives to all an opportunity to start anew in business upon equal terms."

Covenants not to compete in contracts for the sale of a business have also been permitted since enactment of the Civil Code. In its original form, Civil Code section 1674, the exception for the sale of a business provided: "One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein." The commentator's note to the original enactment of this exception provides in part "no one should be allowed to prevent another from carrying on a business unless he himself provides the public with the same advantages in the same county."

In 1941 the prohibition against restraints on trade and both exceptions were recodified without change in the Business and Professions Code. (Stats. 1941, ch. 526, § 1, p. 1834.) In 1961 the exception for partners was amended to its present form.[4] (Stats. 1961, ch. 1091, § 1, p. 2821.)

According to the sponsor of the amendment, the California State Bar, the 1961 amendments were prompted by opinions which narrowly limited the territorial scope of covenants partners could provide each other. In *Dubois*

---

[4]Following recodification in the Business and Professions Code in 1941 as section 16601, the exception for business sales was amended to include "any shareholder of a corporation selling or otherwise disposing of all his shares in said corporation." (Stats. 1945, ch. 671, § 1, p. 1341.) In 1963 section 16601 was amended again to include transactions in which a shareholder of a corporation "sells (a) all or substantially all of its operating assets together with the goodwill of the corporation, (b) all or substantially all of the operating assets of a division or a subsidiary of the corporation together with the goodwill of such division or subsidiary, or (c) all of the shares of any subsidiary." (Stats. 1963, ch. 597, § 1, p. 1476.)

v. *Padgham* (1912) 18 Cal.App. 298, 300-301 [123 P. 207], and again in *Anderson Crop Dusters, Inc.* v. *Matley* (1958) 159 Cal.App.2d 811, 813 [324 P.2d 710], the Courts of Appeal had been confronted with cases where a withdrawing partner had sold the goodwill of a business to a remaining partner and in exchange gave the remaining partner a covenant not to compete in an entire county, rather than a city or town. In both cases the remaining partner argued that since the transaction involved the sale of goodwill, rather than the simple dissolution of a partnership, the then broader territorial limits available for the sale of a business were applied. In *Dubois* v. *Padgham* the court disagreed and found that even when a partnership dissolution was accompanied with a sale of goodwill, the narrower territorial limits of former section 1675 of the Civil Code were meant to apply. In *Anderson Crop Dusters, Inc.* v. *Matley* the court followed *Dubois* v. *Padgham.*

In urging the Governor to approve the 1961 amendment to section 16602 the State Bar cited *Anderson Crop Dusters, Inc.* v. *Matley, supra,* and stated: "Assembly Bill 715, as amended, would make the territorial limitation of Section 16602 of the Business and Professions Code conform to Section 16601. The bill would also limit the time during which any agreement would be operative to the period the remaining member of the partnership carries on a like business therein."

■ Given their express terms and the foregoing history, we cannot accept Asher's argument the goodwill requirement of section 16601 should be read into section 16602. For almost 120 years versions of each statute have stood together, first in the Civil Code and now in the Business and Professions Code. Though given the opportunity through the recodification and amendment of both provisions, the Legislature has never expressly made compensation for goodwill a predicate to application of section 16602. Rather, as we have seen, the only attempt to harmonize the two statutes has been with respect to the permissible territory and duration of limitations on competition.

Moreover, Asher has not cited us to any case which has required a compensation for goodwill to support a restriction on a withdrawing partner's right to compete. Indeed, Asher's reply brief acknowledges his argument is a matter of first impression.

Our unwillingness to require compensation for goodwill where a partnership dissolves and the remaining partners nonetheless wish to protect themselves from competition is buttressed by the fact that the dissolution of a partnership may involve risks not encountered in the sale of a business to a third party. In our view, members of a partnership might reasonably wish to

protect themselves from the risk of paying a withdrawing partner for good-will which the remaining partners in fact produced; partners may also wish to protect themselves from the separate risk that the partnership's goodwill will be diminished by competition from a withdrawing partner. ██ ██ ██ As we read the history of section 16602, and in particular the comments to the version enacted as Civil Code section 1675, so long as all partners are subject to the same limitations, partners can protect themselves from both risks.[5]

In sum we reject Asher's argument because he has confused the concepts of "transfer of goodwill," "specific compensation for goodwill" and the consideration which will support a convenant not to compete. "Goodwill" and a "convenant against competition" are closely related. In general a covenant not to compete is employed to protect the intangible asset denominated "goodwill." However in terms of consideration for a contract, there is obviously consideration for a mutual agreement among partners prospectively to preclude competition when one of them departs the partnership. The promise of each to protect the goodwill of the partnership is consideration for the promise of the other. Nonetheless Asher argues the covenant not to compete must be sustained not simply by consideration, but by specific dollar payment of some sort for the covenant. It is this concept which we reject, finding no support for it in the statute, legislative history or common law. Thus, we find the South Bay partners were free under section 16602 to both impose a covenant not to compete on each other and to refrain from paying a withdrawing partner any amount for the partnership's goodwill.

Accordingly we affirm the trial court's order confirming the arbitration award; respondents to recover their costs of appeal.

Froehlich, J., concurred.

**WIENER, Acting P. J.,** Concurring.—I agree we should affirm the judgment confirming the $450,000 arbitration award. Asher does not challenge the economic components of the award—each is admittedly legal; he did not seek to vacate or correct the award at the trial court by filing a timely

---

[5] However, a person bound by such a covenant must be a bona fide partner. (See *Bosley Medical Group* v. *Abramson* (1984) 161 Cal.App.3d 284, 290 [207 Cal.Rptr. 477]; *Hass* v. *Hodge* (1959) 171 Cal.App.2d 478, 481 [340 P.2d 632].) In *Bosley Medical Group* an employer attempted to come within the literal terms of section 16601 by providing its employees with a nominal number of its shares which they were compelled to sell upon termination of their employment. In *Hass* a physician who controlled all aspects of the practice he shared with another doctor nonetheless attempted to enforce a restrictive covenant by way of an "agreement of association." In both cases the courts looked through the form of the parties' agreements to their substance and found the respective covenants unenforceable.

response under Code of Civil Procedure sections 1285.8 and 1290.6; and he has accepted the money.

The court did not rule on the validity of the covenant and significantly the judgment says nothing about it. The alleged "illegality" of the award is simply nonexistent. In such circumstances, because our review is governed by statute (Code Civ. Proc., §§ 1286.2, 1286.6.) and Asher has failed to assert any of the statutory grounds, we are jurisdictionally required to affirm the judgment.

I assume the majority's decision to expand our jurisdiction in this case is based on the statements in the arbitrator's letter explaining his decision.[1] Implicitly, the majority treat these statements as a binding part of the arbitration award. By confirming the award, so the theory goes, the superior court has not only validated the amount of the award, it has also affirmed the arbitrator's conclusion that the covenant is facially valid.

The arbitrator's written comments, however, are not part of the judgment. They were omitted for good reason. As the arbitrator pointed out, the covenant's validity, i.e., whether a court would enforce the covenant if Asher decided to compete, would necessarily turn on the facts of that case. In fairness to the parties, a decision on that question should properly rest on the facts and circumstances surrounding the nature of Asher's competitive efforts properly reviewed in an appeal, if any, from the judgment following a decision in Asher's pending declaratory relief action.

Arbitration is a process designed to provide for the expeditious resolution of essentially factual disputes. It is well established that an arbitrator may decide legal questions necessary to the resolution of the arbitrable issue and that courts are strictly limited in their ability to review such legal decisions for correctness. (See, e.g., *Hirsch* v. *Ensign* (1981) 122 Cal.App.3d 521, 529 [176 Cal.Rptr. 17].) Here, however, the legal issue we are now asked to review was in no sense necessary to the arbitrator's decision as to the value of the partnership interest. Even if the covenant were invalid, Asher cannot

---

[1] The arbitrator wrote: "With regard to the covenant not to compete, I do not read Business and Professions Code Section 16602 as requiring an express sale of, or payment for good will. I also do not find the covenant not to compete to be so vague as to be unenforceable. Although it is not free from ambiguity, it is clear that its intended purpose was to prohibit Dr. Asher from practicing radiology in the primary service area of South Bay Radiology Medical Associates. The extent to which it may apply to a concrete situation will have to be determined when that situation arises. It is to be hoped that the parties, aware that the clause has its ambiguities, and that at its core is a valid restraint, can resolve without litigation or arbitration whether any activity Dr. Asher may propose is permissible under the clause. In this regard, for example, I do not read the clauses as having been intended to apply to Dr. Asher's participation as an owner of Mediscan, nor to his investment in the medical office building."

force his former partners to pay him the value of his share of the partnership goodwill. The remedy for an invalid covenant is that Asher would be allowed to compete. The remaining partners might well prefer to face the hypothetical possibility of competition rather than pay Asher the price of a valid covenant. As a result, even assuming the arbitrator intended to decide the issue of the validity of the covenant, it was not a legal predicate in any way necessary to the valuation of Asher's partnership interest. Under these circumstances, I find no reasons—compelling or otherwise—which would justify our reaching out to decide a legal issue which was not considered by the superior court, included as part of the judgment, or indeed necessary for resolution of the case before the arbitrator.

A petition for a rehearing was denied May 22, 1990, and appellants' petition for review by the Supreme Court was denied July 10, 1990.